1  Stephen F. Biegenzahn, SBN 60584
   LAW OFFICES OF STEPHEN F. BIEGENZAHN
2  1900 Avenue of the Stars, 11th Floor
   Los Angeles, CA   90067
3  Telephone:    (424) 239-1749
   E-mail:  Steve@sfblaw.com
4
   Counsel for Plaintiff
5  CKR Global Advisors, Inc.

6
                  **UNITED STATES BANKRUPTCY COURT**
7
                  **CENTRAL DISTRICT OF CALIFORNIA**
8
                  **LOS ANGELES DIVISION**
9

| | |
|---|---|
| In re | Case No. 2:17-bk-12392-BR |
| MARK ELIAS CRONE, | Chapter 7 |
| Debtor. | Adv. No. |
| ———————————————— | **COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS** |
| CKR GLOBAL ADVISORS, INC., | |
| Plaintiff, | |
| v. | Date:  [To Be Set] Time: Ctrm:  1668 |
| MARK ELIAS CRONE, an individual, | |
| Defendant. | |
| ———————————————— | |

        CKR Global Advisors, Inc. ("Global Advisors"), complains and alleges of Mark Elias
Crone, the chapter 7 debtor ("Defendant" or "Debtor") in the above-captioned chapter 7
case ("Case") as follows:

///

///

                                  1

## I.

## INTRODUCTION

1.      Global Advisors is, and was at all relevant times, a Nevada corporation the principal place of business of which was, at all times relevant to this Complaint, in the City, County and State of New York.

2.      Defendant, Mark Crone, is the debtor in the above-captioned chapter 7 bankruptcy case ("Defendant"), and an individual who is, upon information and belief, a resident of Los Angeles, California.  Defendant has invoked the jurisdiction of this Court.

3.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 523.

4.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and 157(b)(2)(J).

5.      Venue is proper in this Court pursuant to 28 U.S.C §§ 1408 and 1409.

6.      This is an adversary proceeding in which the Plaintiff seeks a determination that the debt owed by Defendant to the Plaintiff is not dischargeable pursuant to Bankruptcy Code §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4) and 523(a)(6).

## II.

## PRELIMINARY FACTS

7.      Global Advisors was formed by and at the direction of Defendant in or about May, 2010 under the laws of the State of Nevada in the name of Sands of Time, Inc.

8.      At the direction of Defendant, in or about September, 2013, Global Advisors' name was changed from Sands of Time, Inc. to Flourz GF Bakery CT, Inc.

9.      In or about February, 2014, in connection with Defendant's then affiliation with Jeffrey A. Rinde, Esq. and Scott Kline, Esq as Defendant's new law partners in the law firm of CKR Law LLP (the "Law Firm"), the name of the corporation then known as Flourz GF Bakery CT, Inc. was changed to Global Advisors. Messrs Kline, Crone and Rinde agreed that Global Advisors would provide consulting and advisory services to

2

1  some domestic clients of the Law Firm.

2      10.  At the time of the change in Global Advisors' name in 2014, Defendant

3  represented—orally and in writing— to Messrs. Rinde and Kline that the corporation then

4  to be known as Global Advisors had not previously engaged in business or issued any of

5  its equity ownership.

6      11.  On or about February 10, 2014, Defendant represented in writing to the

7  Nevada Secretary of State and certified to her under penalty of perjury, that the President

8  of Global Advisors was Jeffrey A. Rinde; that he was the secretary of the corporation; that

9  Scott C. Kline was the Treasurer; and its directors were Defendant and Jeffrey A. Rinde.

10     12.  During that same timeframe, Defendant represented orally and in writing to

11  Messrs. Rinde and Kline that the equity in Global Advisors would be issued and held by

12  the three of them (Defendant, Kline and Rinde) equally—in other words, that Defendant

13  and Messrs Kline and Rinde would each be a one-third owner of Plaintiff and Officers and

14  Directors thereof.

15     13.  In or about January and February, 2014, written Resolutions of Global

16  Advisors' Board of Directors and Written Consents of its shareholders to the foregoing

17  effect were prepared, circulated and signed by Defendant and his then partners. The

18  shareholders of Plaintiff also confirmed their agreement to the form and content of a

19  Shareholders' Agreement between them.

20     14.  In furtherance of the business of Global Advisors in which Defendant and his

21  new partners were then and thereafter to engage, on August 31, 2015, Defendant

22  represented to the Nevada Secretary of State and certified to her under penalty of perjury,

23  that the President of Global Advisors and one of its directors was Jeffrey A. Rinde.

24     15.  In or about September, 2015, Scott Kline, one of the three original and equal

25  owners of Global Advisors, left CKR Law and departed the businesses in which he,

26  Defendant and Mr. Rinde were then engaged.  As a result of Mr. Kline's departure, and

27  from and after such time, the equity of Global Advisors was owned equally by Defendant

28  and Mr. Rinde; each remained an Officer (Rinde as President and Defendant as

1 | Treasurer) and Director thereof.

2 | 16.   Without any notice or the knowledge, authority or consent Plaintiff or Mr.

3 | Rinde, the only other shareholder, and director and officer of Global Advisors', on or

4 | about April 18, 2016, Defendant surreptitiously and unlawfully filed with the Nevada

5 | Secretary of State, and certified, under penalties of perjury, that the Defendant was the

6 | President, Secretary, and Treasurer of Global Advisors, and that he was the sole director

7 | thereof.  At or about that same time, Defendant purported to change the name of Global

8 | Advisors to "Ascendant Global Advisors, Inc." Such filings by Defendant were knowingly

9 | false and fraudulent, and were made without due authorization, and without any prior or

10 | contemporaneous notice to, or the consent of, Mr. Rinde.

11 | **III.**

12 | **GENERAL ALLEGATIONS**

13 | 17.  In 2015, the Law Firm rendered legal services in connection with a reverse

14 | merger being pursued by a client of the Law Firm.   In consideration for some of such

15 | legal and related services rendered by the  Law Firm in 2015, Plaintiff, as the Law Firm's

16 | permitted—"designee" was issued and received certificate no. 1091 representing 100,000

17 | shares of the common stock of Akoustis Technologies, Inc. ("Certificate 1091").

18 | 18.  At all times relevant to this Complaint, Plaintiff's rights to and under Certificate

19 | 1091 were and remain its only material asset.

20 | 19.  In March, 2017, the value of the Akoustis stock represented by Certificate

21 | 1091 was approximately $1,300,000.  During the litigation by Plaintiff to obtain

22 | repossession of Certificate 1091, that value has sunk to approximately $1,000,000.

23 | 20.    In early 2016, as a result of numerous issues arising from Defendant's

24 | previously undisclosed personal and professional problems, Defendant and Mr. Rinde

25 | began to discuss how they would separate professionally.  In furtherance of Defendant's

26 | efforts to resolve his own personal and legal problems, Defendant embarked on a

27 | concerted effort to, inter alia, defraud Plaintiff and Mr. Rinde, by taking steps to steal and

28 | to make exclusive use of Certificate 1091 as Defendant's own property.  To that end, as

4

1    alleged above, his own in order to resolve some of these personal difficulties Defendant

2    was then confronting, as alleged above, Defendant surreptitiously, fraudulently and

3    without due authority or the required consent of Global Advisors' Board of Directors or its

4    other shareholder, Mr. Rinde, purported to change Plaintiff's name to "Ascendant Global

5    Advisors, Inc."  In furtherance of his fraudulent scheme, at a time when Mr. Rinde was

6    traveling on Law Firm business, and without Mr. Rinde's knowledge or consent,

7    Defendant fraudulently induced a non-lawyer employee of the Law Firm to open the Law

8    Firm's safe and to give Defendant Certificate 1091.  Defendant then removed and

9    converted Certificate 1091 and took steps to unlawfully use the shares of stock

10    represented thereby as his own.

11       21.  Once they became aware of Defendant's theft and fraud, in June, 2016 Global

12    Advisors, and others sued Defendant in the Supreme Court of the State of New York

13    seeking damages and an injunction directing the return to Global Advisors of its property,

14    to wit, Certificate 1091. In January, 2017 an injunction was issued against Defendant

15    preventing, inter alia, any sale or transfer of Certificate 1091 or the shares of stock

16    represented thereby.

17       22.  Thereafter, and while that lawsuit was pending, but after Plaintiff's injunction

18    motion had been fully briefed, pursuant to a "Marital Settlement Agreement" dated

19    November 30, 2016 and approved by a Connecticut court in December, 2016, in

20    purported satisfaction of Defendant's martial obligations to his ex-wife, Defendant

21    purported to transfer his interest in Global Advisors, including his interest in Certificate

22    1091 and the shares of Akoustis stock represented thereby, to his ex-wife, Susan Crone

23    (the "Purported Transfer").

24       23.  At the time of the Purported Transfer, Defendant knew that he did not have the

25    authority to make the Purported Transfer and that his actions in respect of the Purported

26    Transfer were knowing and willful and, as a matter of law, presumptively fraudulent.

27       24.  None of the actions taken by Defendant, as alleged in paragraphs 11, 12, 14,

28    16, and 20 above, were in compliance with the requirements of law. In fact, Defendant's

1    acts and omissions were knowingly false and fraudulent and intended to cause harm to,

2    inter alia, Global Advisors.

3          25.  Global Advisors has been damaged by Defendant's acts and omissions as

4    aforesaid, including damages sustained by virtue of the conversion of Global Advisors'

5    property by Defendant, and the concerted acts by Defendant and others to delay,

6    frustrate and prevent Global Advisors from recovery of its property, to wit, Certificate 1091

7    and the shares of stock represented thereby.

8          26.  In February, 2017, in response to Plaintiff and its co-plaintiffs' continued effort

9    to regain possession of Certificate 1091, Defendant filed a voluntary bankruptcy petition.

10   Since that time, and in numerous ways, Defendant and his affiliates, agents and

11   representatives have continued to engage in a deliberate scheme to delay and impede

12   Plaintiff's rights to Certificate 1091, and to increase Plaintiff's costs in the pursuit of its

13   rights and remedies.  In fact, the United States District Court in the Southern District of

14   New York characterized such concerted acts and omissions as "shenanigans."

15                                   **IV.**

16                          **FIRST CLAIM FOR RELIEF**

17                (Nondischargeable Debt Under 11 U.S.C. § 523(a)(2)(A))

18         27.       Plaintiff refers to, reiterates and re-alleges the allegations set forth in

19   paragraphs 1 through 26 of this Complaint and incorporates them here by this reference.

20         28.       Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

21                   A discharge under section 727, 1141, 1228(a),
                     1228(b) or 1328(b) of this title does not discharge an
22                   individual debtor from any debt -
                      (2) for money, property  [or] services . . . to the extent
23                   obtained by

24                        (A) false pretenses, a false representation or actual
                         fraud . . . ." may not be discharged in bankruptcy.
25

26   11 U.S.C. § 523(a)(2)(A).

27         29.       Defendant knowingly and fraudulently purported to alter Plaintiff's name

28   and its officers and directors and converted Certificate 1091, and purported to transfer

6

1   Certificate 1091 and/or his interest therein to his ex-wife with the actual intent to defraud

2   Plaintiff.

3       30.       All or part of the debt owed to the Plaintiff-Creditors is non-dischargeable

4   as a debt for property obtained by actual fraud within the meaning of Bankruptcy Code §

5   523(a)(2)(A).

6                                          **V.**

7                            **SECOND CLAIM FOR RELIEF**

8                  (Nondischargeable Debt Under 11 U.S.C. §523(a)(2)(B))

9       31.       Plaintiff refers to, reiterates and re-alleges the allegations set forth in

10  paragraphs 1 through 27 of this Complaint and incorporates them here by this reference.

11      32.       Bankruptcy Code § 523(a)(2)(B) provides, in relevant part, that:

12              (a) A discharge under section 727, 1141, 1228(a),
                1228(b) or 1328(b) of this title does not discharge an
13              individual debtor from any debt -

14                  (2) for money, property, services, or an extension,
                    renewal, or refinancing of credit, to the extent
15                  obtained by -

16                      (B) use of a statement in writing -
                            (i)     that is materially false;
17                          (ii)    Respecting the debtor's or an insider's financial
                                    condition;
18                          (iii)   on which the creditor to whom the debtor is liable for
19                                  such money, property, services, or credit reasonably
                                    relied; and
20                          (iv)     that the debtor caused to be made or published with
                                    intent to deceive; . . . .
21

22  11 U.S.C. § 523(a)(2)(B).

23      33.       Plaintiff is informed and believes; and on that basis alleges, that

24  Defendant made numerous assurances in writing regarding his financial condition, and

25  professional status; and intentionally caused Plaintiff to deliver money to Defendant

26  based on his assurances.

27      34.       All or part of the debt owed to the Plaintiff is non-dischargeable since it is

28

1  a debt for money obtained by false pretenses, a false representation, or actual fraud

2  within the meaning of Bankruptcy Code § 523(a)(2)(A).

3  **VI.**

4  **THIRD CLAIM FOR RELIEF**

5  (Nondischargeable Debt Under 11 U.S.C. § 523(a)(4))

6        35.      Plaintiff refers to, reiterates and re-alleges the allegations set forth in

7  paragraphs 1 through 27 of this Complaint and incorporates them here by this reference.

8        36.      Bankruptcy Code § 523(a)(4) provides, in relevant part, that:

9
         (a) A discharge under section 727, 1141, 1228(a),
            1228(b) or 1328(b) of this title does not

10             discharge an individual debtor from any debt -

11           (4) for fraud or defalcation while acting in a
            fiduciary capacity, embezzlement, or larceny;

12

13 11 U.S.C. § 523(a)(4).

14       37.      At all times relevant to this Complaint, Defendant owed a fiduciary duty to

15 Plaintiff.

16       38.      Plaintiff is informed and believes that Defendant's conduct, as alleged

17 above, amounts to larceny as the term is defined in § 155.05 of The Penal Law of the

18 State of New York.

19       39.      All or part of the debt owed to the Plaintiff is non-dischargeable as it is a

20 debt for culpable larceny within the meaning of Bankruptcy Code § 523(a)(4).

21       40.      Plaintiff is further informed and believes that Defendant's actions amount to

22 fiduciary fraud, and are, thus, not dischargeable under Bankruptcy Code § 523(a)(4).

23 **VII.**

24 **FOURTH CLAIM FOR RELIEF**

25 (Nondischargeable Debt Under 11 U.S.C. § 523(a)(6))

26       41.      Plaintiff refers to, reiterates and re-alleges the allegations set forth in

27 paragraphs 1 through 27 of this Complaint and incorporates them here by this reference.

28

42.     Bankruptcy Code § 523(a)(6) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a),
> 1228(b) or 1328(b) of this title does not discharge an
> individual debtor from any debt -
>
> (6) for willful and malicious injury by the debtor to another
> entity [(defined by 11 U.S.C. § 101(15) to include a
> "person," which per 11 U.S.C. § 101(41) includes an
> "individual")] or to the property of another entity;

11 U.S.C. § 523(a)(6).

43.     The Debtor's debt to Plaintiff arose from the knowing, willful and malicious

conduct of Defendant; and is not dischargeable under 11 U.S.C. § 523(a)(6).

44.     All or part of the debt owed to the Plaintiff is non-dischargeable since it is

a debt for willful and malicious injury by the Debtor to Plaintiff within the meaning of

Bankruptcy Code § 523(a)(6).

## VIII.

## PRAYER

WHEREFORE, Plaintiff prays that this Court enter a judgment determining that

the debt of the Debtor to the Plaintiff is non-dischargeable under Bankruptcy Code §§

523(a)(2)(A), 523(a)(4), and 523(a)(6), and granting Plaintiff such other and further relief

as this Court may deem just and proper.


Dated:  June 12, 2017                    LAW OFFICES OF STEPHEN F. BIEGENZAHN


                                          By: _____
                                            STEPHEN F. BIEGENZAHN, ESQ.
                                            Counsel for CKR Global Advisors, Inc.